321 So.2d 684

**O. C. WHITMON and Fran Whitmon**

v.

**Deanna Lou KILLEN and John Milton Killen.**

**Civ. 570.**

Court of Civil Appeals of Alabama.

Oct. 29, 1975.

W. A. Barnett, Florence, for appellants.

No brief for appellees.

WRIGHT, Presiding Judge.

This is an appeal from modification of a decree of child custody.

Plaintiffs Killen are the half-sister and brother-in-law of Susan Joy Whitmon. Defendants Whitmon are the father and step-mother of Susan. Susan is the 16-year-old daughter of O. C. Whitmon and Helen Whitmon, deceased. The father had been given custody of Susan prior to the death of her mother. She was then six years of age.

Plaintiffs filed a petition requesting that custody of Susan be removed from the father and granted to them. They alleged that Susan had become unhappy in the home of her father and that the father drank to excess.

Testimony was taken orally before the court. A decree was entered granting custody to plaintiffs. Defendants appeal.

The testimony tended to show that the father had given more than amply material necessities and luxuries to Susan. She had done well in school and had become an accomplished musician. There had been no problems in the relationship between Susan and defendants until she became some 15 years of age and met a young man with whom she began to keep steady company. She was permitted to see him each night of the weekend and talk on the telephone for not more than 30 minutes at a time. Her grades began to go down. She became less interested in her music and appeared to withdraw within herself when she was at home. Her father suggested that she go with other boys and not restrict herself to one boyfriend. She refused his suggestion.

One night in November, 1974, Susan ran away from home. She left a note complaining that she felt unloved by her parents and that they did not communicate with her or talk with her about her problems. She spent at least one night with her boyfriend at his parents home. She was gone for several days and then went to the home of plaintiffs. She refused to divulge who had carried her away and where she had stayed, even to the court. The following day plaintiffs notified Susan's father of her return. The father could not convince her to return home, and subsequently secured her return by resort to the juvenile authorities.

Plaintiffs filed their petition for change of custody on December 16, 1974. Susan continued to insist to her father that she wished to live with plaintiffs. On Christmas day he permitted her to move to plaintiffs' home where she remained at the time of the hearing on January 21, 1975.

It is clear from the testimony that there was a serious breakdown of the parent-child relationship between Susan and her father and stepmother at a critical time in her teenage years. Susan fell in love for the first time. This love became the center of her life. The relationship was sexually consummated and prior adolescent interests were forgotten. She resented any interference with the compelling desire to be with her lover. She could not accept discipline which thwarted her desire to spend all of her time with the only one she felt really loved her. She felt her parents didn't love her because they could not recognize her need to be with Billy.

The phenomenon of adolescent first love, though not unusual, often culminates in sad and tragic consequences. It has in Susan's case. It has thus far resulted in destroying, hopefully only temporarily, the apparently excellent family relationship between Susan and her father and stepmother. Susan, in seeking some blame, outside of herself, for her confusion and unhappiness, accused her parents, particularly her father, of excessive drinking of alcohol. However, there is little, if any, testimony of such excessive drinking, other than her own. Perhaps her father did drink more than he should, but there is no testimony, even by Susan, that while drinking he mistreated or abused her or anyone else. It never interfered with his work or was reflected in loss of support for or attention to his family. There was no testimony that it occurred outside of his home or caused embarrassment.

Defendants have reared three sets of children of different parentage. The evidence indicates that all have been given every material opportunity possible. It was stated by Susan that she was given material advantages, possibly to excess. Her stepmother taught her the domestic and social knowledge necessary to a young lady. Her parents carried her with them to restaurants and to social events. She was permitted to join social clubs and to entertain her friends at home.

Susan's response to all of the giving was that it did not show her she was loved. She therefore ran away. It is doubtful that the testimony of her parents, that they loved her and desired her to return to their home, has impressed Susan. It is doubtful that the time and expense expended by them in defending this action has convinced her of their love and concern for her. However, this court is convinced by the testimony that defendants love Susan and that it is to her best interest to remain legally in their custody.

Fully recognizing the presumption of correctness to be given in a review of a decree of the trial court after hearing ore tenus,[1] we are convinced that as a matter of law and fact, the decree of the trial court is not supported by the evidence and is manifestly wrong. We think we understand the practical reasoning underlying the judgment of the experienced and distinguished trial judge. We understand that it may be difficult or impossible for defendants to enforce their legal custody upon a 16-year-old girl who refused their love and protection. However, difficulty of enforcement cannot be permitted to overcome legality. Defendants have already recognized the futility of force in this case by permitting Susan to live in the home of plaintiffs. Because of her immaturity and obstinance, Susan may refuse to submit to the supervision and care of her parents. She nevertheless will be legally subject to them. Perhaps such legal control will someday prevent her from committing further tragic mistakes in her young life. Properly used it may serve as

1. *McGee v. McGee*, 284 Ala. 320, 224 So.2d 672.

an instrument of communication and reconciliation.

■ In any event, this court cannot permit the will and desire of a young girl,[2] unsupported by just cause, to determine the modification of her custody. Should we do so in this case, the legal principles of parental priority of custody[3] would be abandoned and the requirement of proof of material change of circumstances affecting the welfare and best interest of the child[4] would become a nullity.

In reaching our decision, we do not admonish plaintiffs for their actions. Though they confess to no knowledge of circumstances or conduct of defendants adverse to the best interest of Susan, we can understand the reason for plaintiffs bringing this action for custody of Susan. We do not approve of it, for it is calculated to widen the breach between Susan and her father, when plaintiffs' effort should have been used to conciliate.

In reversing the judgment of the learned trial judge, it is the hope of this court that the parties will join their best efforts to reunite Susan with her parents and rescue this intelligent and talented young lady from the dangerous journey she has begun.

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.

---

**2.** Although her preference is entitled to consideration, it is not controlling. *Hattrick v. Hattrick,* 52 Ala.App. 539, 295 So.2d 260.

**3.** *Esco v. Davidson,* 238 Ala. 653, 193 So. 308.

**4.** *Carter v. Harbin,* 279 Ala. 237, 134 So.2d 145; *Anonymous v. Anonymous,* 277 Ala. 634, 173 So.2d 797.